| | | |
|---|---|---|
| **GREG REED** | : | |
|     **Northpoint Training Center** | : | **Case No. 5:10-cv-00288-JBC** |
|     **P.O. Box 479** | : | |
|     **Burgin, Kentucky 40310** | : | **Judge Jennifer B Coffman** |
| | : | |
| **and** | : | **Magistrate Judge Edward B. Atkins** |
| | : | |
| **DUSTIN BRUMLEY** | : | **AMENDED CLASS ACTION** |
| | : | **COMPLAINT WITH REQUEST FOR** |
| **and** | : | **DAMAGES AND INJUNCTIVE** |
| | : | **RELIEF AND WITH JURY DEMAND** |
| **JUSTIN MURRAY** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JOSEPH PITTMAN** | : | |
| | : | |
| **and** | : | |
| | : | |
| **DEXTER WRIGHT** | : | |
| | : | |
| **and** | : | |
| | : | |
| **ANTHONY ANDERSON** | : | |
| | : | |
| **and** | : | |
| | : | |
| **RYAN MCCORKLE** | : | |
| | : | |
| **and** | : | |
| | : | |
| **TYRONE CHANDLER** | : | |
| | : | |
| **and** | : | |
| | : | |
| **DERONE WHITTLE** | : | |
| | : | |
| **and** | : | |
| | : | |
| **DAVID ANDERSON** | : | |
| | : | |
| **and** | : | |

**CLIFTON BOARDS** :
:
**and** :
:
**SHAWN WILSON** :
:
**and** :
:
**MARKUS MINTER** :
:
**and** :
:
**DEMETRIUS DAVIS** :
:
**and** :
:
**ROBERT ALVEY** :
:
**and** :
:
**TONEY HENRY** :
:
**and** :
:
**BOBBY HOSKINS** :
:
**and** :
:
**EDMUND CHANEY** :
:
**and** :
:
**SCOTT CANADA** :
:
**and** :
:
**STACY NEWELL** :
:
**and** :
:
**JARED DERKSON** :
:
**and** :
:
**ANTHONY EDWARDS** :
:

| | |
|---|---|
| **and** | : |
| | : |
| **LESLIE EMERSON** | : |
| | : |
| **and** | : |
| | : |
| **JEREMY DUREE** | : |
| | : |
| **and** | : |
| | : |
| **NATHAN STANDARD** | : |
| | : |
| **and** | : |
| | : |
| **JUSTIN MOORE** | : |
| | : |
| **and** | : |
| | : |
| **MICHAEL REECE** | : |
| | : |
| **and** | : |
| | : |
| **JOHN POUND** | : |
| | : |
| **and** | : |
| | : |
| **PERNELL BIBB** | : |
| | : |
| **and** | : |
| | : |
| **CHRISTOPHER MOBERLY** | : |
| | : |
| **and** | : |
| | : |
| **JOHNNY CISSELL** | : |
| | : |
| **and** | : |
| | : |
| **MARK ANDERSON** | : |
| | : |
| **and** | : |
| | : |
| **ROBERT L. WILLIAMS** | : |
| | : |
| **and** | : |
| | : |

**RICHARD EDWARDS**                          :

**and**                                      :
                                             :
**SHAWN WRIGHT**                             :
                                             :
**and**                                      :
                                             :
**AARON FISK**                               :
                                             :
**and**                                      :
                                             :
**TEKO HATFIELD**                            :
                                             :
**and**                                      :
                                             :
**ERIC WATTS**                               :
                                             :
**and**                                      :
                                             :
**MIGUEL BATTLE**                            :
                                             :
**and**                                      :
                                             :
**JOSEPH CARR**                              :
                                             :
**and**                                      :
                                             :
**WILLIAM STRANGE**                          :
                                             :
**and**                                      :
                                             :
**KELLY EDWARDS**                            :
                                             :
**and**                                      :
                                             :
**ANTONIO HOUSE-BEY**                        :
                                             :
**and**                                      :
                                             :
**GREGORY LOVELACE**                         :
                                             :
**and**                                      :
                                             :
**JOHNNY MCKINNEY**                          :
                                             :

**and**                            :
:

**ROBERT WATTS**          :
:

**and**                            :
:

**RICKY LEE**               :
:

**and**                            :
:

**ROBERT WILIAMS**       :
:

**and**                            :
:

**MATTHEW JOHNSON**     :
:

**and**                            :
:

**HEZZIE BOWMAN**        :
:

**and**                            

**TIMOTHY RILEY**         :
:

**and**                            :
:

**KELLEY CHEATHAM**     :
:

                **Plaintiffs.**     :
:

       **vs.**                    :
:

**WARDEN STEVE HANEY**   :
      **Highway 33, Box 479**  :
      **Burgin, Kentucky 40310**  :
:

**and**                            :
:

**SERGEANT HARRIS**      :
:

**and**                            :
:

**LIEUTENANT BRYANT**    :
:

**and**                            :
:

**OFFICER WEITZEL**                                                :
                                                                   :
**and**                                                            :
                                                                   :
**SERGEANT STEVENS**                                               :
                                                                   :
**and**                                                            :
                                                                   :
**SERGEANT HUMPFLEET**                                             :
                                                                   :
**and**                                                            :
                                                                   :
**OFFICER LUNSFORD**                                               :
                                                                   :
**and**                                                            :
                                                                   :
**OFFICER AARON MANKIN**                                           :
                                                                   :
**and**                                                            :
                                                                   :
**DANA JOHNSON**                                                   :
                                                                   :
**and**                                                            :
                                                                   :
**OFFICER VAUGHT**                                                 :
                                                                   :
**and**                                                            :
                                                                   :
**OFFICER CHAMBERLAIN**                                            :
                                                                   :
**and**                                                            :
                                                                   :
**SERGEANT CHILDRESS**                                             :
                                                                   :
**and**                                                            :
                                                                   :
**NORTHPOINT TRAINING CENTER**                                     :
     **Highway 33, Box 479**              :
     **Burgin, Kentucky 40310**           :
                                                                   :
        **Defendants.**     :

Comes now the Plaintiffs, by and through their counsel, and for their Complaint and Jury Demand against Defendants,[1] state as follows:

## INTRODUCTION

1. This is a class action Complaint for jail house misconduct giving rise to civil rights, constitutional, and pendent state law claims.

2. Upon information and belief, numerous individuals currently and formerly incarcerated at Northpoint Training Center including the Plaintiffs have been subjected to cruel and unusual punishment as a consequence of Defendants' retaliation, Defendants' policies and practices, and their neglect and deliberate indifference to such individuals' constitutional rights.

3. Upon information and belief, numerous individuals incarcerated at Northpoint Training Center have been denied medical attention for their serious medical needs, and have been denied appropriate and necessary medications prescribed by recognized medical authorities as a consequence of Defendants' retaliation and Defendants' policies and practices, and their neglect of and deliberate indifference to these individuals' medical needs.

4. As further detailed below, there are questions of law and fact in this case common to all affected currently and formerly incarcerated individuals at the Northpoint Training Center. Plaintiffs' claims are typical of those of the class, and they will fairly and adequately protect the interests of the class.

---

[1] The first names of several of the individual defendants are not readily known at this stage of the pleading because of the foregoing reasons: The individual defendants are correctional officers at the Defendant Northpoint Training Center, which is a locked facility. Because home addresses of law enforcement personnel are subject to confidentiality, they cannot be obtained through public records requests. Likewise, the identifiable first names of the individual defendants have also not been found at this stage of the pleadings. The averments of this pleading, to the extent that plaintiffs do not currently have evidentiary support therefor, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

## JURISDICTION AND VENUE

5.  This action is brought to redress gross and unconscionable violations of the rights, privileges and immunities guaranteed by the Fifth, Eighth and Fourteenth Amendments protected by the United States Constitution, 42, U.S.C. § 1983.

6.  Jurisdiction over the federal civil rights claim is conferred on this Court by 28 U.S.C §§ 1331 and 1343(3) and (4).

7.  The subject matter of the Complaint arises out of events that took place in Boyle County, Kentucky. This Court is thus the proper venue to grant the Plaintiffs the relief they seek under 28 U.S.C. § 1391.

## PARTIES

8.  Defendant Northpoint Training Center, at all times mentioned herein, employed, and was responsible for the establishment of policies, customs and practices governing the employment, training, supervision and conduct of the officers and employees of the Jail.

9.  Defendant Steve Haney, Warden of Northpoint Training Center, in his individual capacity was responsible for the establishment of policies either formally or by custom and practice for, and for the employment, training, supervision and conduct of the officers and employees of the defendant Northpoint Detention Center.

10. Defendant Steve Haney, Warden of Northpoint Training Center, in his individual capacity was responsible for the established of the grievance process. Defendant Steve Haney frustrated the ability of inmates to file grievances, failed to respond to grievances and responded to grievances regarding the abusive treatment by the staff that no policy exists to cure a conflict between a staff member and an inmate.

11. At all times relevant, the individual Defendants were medical professionals, officers and employees of the Defendant Northpoint Training Center, employed by the Commonwealth of Kentucky and directly responsible for, the care and custody of Plaintiffs and the conditions of the Jail.

12. At all times relevant, the individual Defendants participated or acquiesced to the mistreatment of the Plaintiffs described below in their individual capacities.

13. At all times relevant, Plaintiffs were inmates of the North Point Training Center, located in Boyle County in the Commonwealth of Kentucky.

14. This lawsuit is brought by these prisoners who were victimized and denied their constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the plaintiffs and the circumvention of the procedural due process rights.

15. Some or all of the Plaintiffs have exhausted their administrative remedies, or it was futile to exhaust their administrative remedies, or under the facts of this case it was impossible to utilize their administrative remedies.

## **CLASS ACTION**

16. Plaintiffs bring this jail house misconduct/civil rights action as a class action pursuant to Rules 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure.  The class consists of all persons who, while incarcerated at the Northpoint Training Center, have been physically and mentally abused; denied medical treatment for their serious medical needs; and denied appropriate and necessary medication prescribed by recognized medical authorities, all as a consequence of Defendants' retaliation, policies and practices, neglect and deliberate indifference.

17. It is not uncommon for jail house misconduct/ police misconduct cases to be certified as

class actions.[2] Moreover, a class action is superior to other available methods for the fair

and efficient adjudication of this controversy because:

(a) a multiplicity of suits with a consequent burden on the courts and defendants should
be avoided;

(b) it may be virtually impossible for all class members to intervene as parties/plaintiffs
in this action;

(c) upon adjudication of Defendants' liability, claims of the class members can be
determined by this Court.

18. Courts have regularly certified classes in jail house misconduct cases that are analogous to

these claims, *i.e.*, challenge to a policy or pattern of conduct that affects all or an

ascertainable segment of an incarcerated population.[3] For example, numerous courts on

many occasions have certified classes of pre-trial detainees subjected to unlawful strip

searches.[4] Judge Green of the District of Columbia District Court certified a class of all

current and future women inmates in the District of Columbia Department of Corrections

challenging guard-on-inmate sexual misconduct and other prison conditions under Rule

23(a), 23(b)(1) and 23(b)(2).[5]

---

[2] *See, e.g., Doe v. Calumet City, Illinois*, No. 87C3594, U.S. District Court for the Northern District of Illinois, Eastern Division; *Diamond, et al. v. District of Columbia*, Civil Action No. 03-2005 (E.G.S.) (D.D.C., class certified March 3, 2004); *Barham v. Ramsey, and Chang, et al. v. U.S., et al.*, 217 F.R.D. 262 (2003).

[3] *Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977); *Washington Mobilization Committee v. Culinane*, 400 F. Supp. 186 (D.D.C. 1975); *Savard v. Rhode Island*, 338 F.3d 23, 31 (1st Cir. 2003).

[4] *Maneely v. City of Newburgh*, 208 F.R.D. 69 (S.D.N.Y. 2002) (certification granted to class challenging policy of conducting blanket strip searches of pretrial arraignment prisoners); *Mack v. Suffolk County*, 191 F.R.D. 16, 17 (D. Mass. 2000) (certification granted to class of female arrestees challenging a policy of subjecting all female arrestees to blanket strip searches); *Johns v. DeLeonardis*, 145 F.R.D. 480 (N.D. Ill. 1992) (class certified where approximately twenty-five women was subjected to illegal strip search by Chicago police officers in a police raid).

[5] *Women Prisoners of District of Columbia Department of Corrections v. District of Columbia*, 877 F. Supp. 634, 635 (D.D.C. December 13, 1994).

19. Class actions are particularly suitable in civil rights cases such as this one. The purposes of class actions are to (1) avoid multiplicity of actions, and (2) enable persons to assert small claims that could not be litigated individually because the costs would far outweigh any recovery.[6] Class actions "conserve" resources by permitting an issue potentially affecting every class member to be litigated in an economical fashion.[7] Civil rights cases "are often by their very nature class suits involving class wide wrongs."[8]

20. The United States Supreme Court and the appellate courts have repeatedly endorsed the class action procedure as the superior method of adjudicating cases where there are numerous claims that are too small to litigate individually.[9] Moreover, "certain types of lawsuits, *such as those in the criminal justice area*, are inherently class actions because individual wrongs can be righted only by institutional reforms affecting an entire class of people."[10]

21. Plaintiffs will fairly and adequate protect the interests of all class members. They are members of the class and their claims are typical of the claims of all class members. Plaintiffs will aggressively pursue the interests of the entirety of the class. Plaintiffs' interests in obtaining injunctive relief and actual and punitive damages for the violations of their constitutional rights and privileges are consistent with, and not antagonistic of, those of any other persons within the class.

---

[6] *E.g., Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345-349 (1983).

[7] *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982).

[8] *East Texas Motor Freight, Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977).

[9] *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Blackie v. Barrack*, 524 F.2d 891, 899 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976).

[10] Herbert B. Newberg and Alba Conte, *Newberg on Class Actions* (4th ed. 2002) § 25:25 (emphasis added).

22. Class counsel will adequately represent the class. Counsel are experienced in handling class action litigation. For purposes of treatment of the class claims under Rule 23(b)(3), the class is manageable, notice to the class can be readily achieved, and the issue of how to treat individual damages does not predominate over the other issues raised by Plaintiffs' claims, making class treatment of these claims superior to any other approach.

23. Given the circumstances of their incarcerations and the response to grievances, as detailed below, Plaintiffs allege that Defendants Warden Steve Haney and Defendants North Point Training Center have a policy, custom or practice of mistreating inmates and of denying inmates medical attention for their serious medical needs; and denying appropriate and necessary medication prescribed by recognized medical authorities.

24. Such conduct violates such individual's rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

## FACTS

25. Plaintiffs incorporate by reference each and every allegation contained within the above paragraphs.

26. On or about August 18, 2009, at 2:30 p.m., an altercation involving weapons erupted between groups of inmates in the chapel area of Defendant Northpoint Training Center.

27. As a result of the altercation the prison was placed on a modified lockdown.

28. The lockdown restricted inmates to their living areas and prevented immediate access to programs and recreational activities in the gym and to the open yard.

29. In order to further investigate the August 18th disturbance, the population of the institution remained on lockdown for several days.

30. On August 21, 2009 angered by the treatment during modified lockdown, a small group of inmates engaged in rioting behavior, this group of inmates proceeded to loot and burn down a portion of the facility.

31. In retaliation for the riot, the Defendants proceeded to abuse and torture the inmates with no distinction between those that were and were not engaged in the riot.

32. Following the riot an investigation was performed, this investigation revealed that the guards were angry with the inmates.

### A. AARON FISK

33. As retaliation for the riot Plaintiff Fisk was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Fisk was forced to lay on his stomach for approximately (24) hours. During this time Plaintiff Fisk was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

34. Following the riot Plaintiff Fisk was approached by numerous correctional officers (C.O.'s) in riot gear. Although he was complying, Plaintiff Fisk was told that he was not complying and that he was resisting. Following this statement Plaintiff Fisk was slammed against the wall, choked, thrown down onto the concrete floor, and maced repeatedly. Plaintiff Fisk asked numerous times to be cuffed but the C.O.'s would not cuff him. As a result of the physical assault, Plaintiff Fisk broke his teeth.

35. Plaintiff Fisk was placed in the "hole" prior to any internal conviction for involvement in the riot. Plaintiff Fisk also remained in the "Hole" long after his required punishment for involvement in the riot.

36. While in the "hole," Plaintiff Fisk was not allowed to purchase toilet paper when he would run out of the facility provided supply. Unidentified Defendants instructed Plaintiff Fisk to use his hand and taunted him.

## B. DEXTER WRIGHT

37. During the riot Plaintiff Wright was forced to stay in his room and denied the ability to evacuate despite the fact that his dorm was on fire.

38. At 11:00 p.m., in anticipation of evacuation from the dorm, Plaintiff Wright was ordered to lie down and place his hands on his head, to which he complied. Without provocation or justification, Defendant Sergeant Harris then kicked Plaintiff Wright in the face, jumped on his back and struck his body multiple times.

39. At the same time Defendant Lieutenant Bryant struck Plaintiff Wright in the hand with a large wooden club.

40. Defendant Harris then twisted Plaintiff Wright's arms and zip-tied his hands together so tightly that they turned blue.

41. While restrained, Plaintiff Wright was thrown against a wall by Defendant Harris thus injuring his head.

42. The physical assault upon Plaintiff Wright was witnessed by Plaintiff Reed.

43. Plaintiff Wright was then cited for participation in the riot.

## C. RICHARD EDWARDS

44. In retaliation for the riot Plaintiff Richard Edwards was placed in the "hole".

45. While in the "hole" Unidentified Defendants and Defendant Weitzel harassed and mentally abused Plaintiff Richard Edwards, including spitting into his cell and physically threatening his roommate.

46. Defendant Weitzel spit tobacco juice into the cell of Plaintiff Richard Edwards.

47. At one point Plaintiff Richard Edwards slipped and fell on the spit, which resulted in the formation of an open wound at the site of impact.

48. Plaintiff Richard Edwards requested that he be treated for communicable diseases, Unknown Medical Personnel denied the requests.

49. Plaintiff Richard Edwards then filed a grievance, including a request to receive medical treatment and be tested for communicable diseases, the grievance was not answered until January 6, 2010.

50. Ultimately, his grievance and request were both denied.

## D. ANTHONY ANDERSON

51. As retaliation for the riot Plaintiff Anthony Anderson was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Anthony Anderson was forced to lay on his stomach for approximately (48) hours. During this time Plaintiff Anthony Anderson was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

52. Plaintiff Anthony Anderson's hands were zip-tied so tightly and for such a length of time that they became numb.

## E. MARK ANDERSON

53. As retaliation for the riot Plaintiff Mark Anderson was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Mark Anderson was forced to lay on his stomach for approximately (48) hours. During this

time Plaintiff Mark Anderson was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

54. While restrained in the baseball field Plaintiff Mark Anderson was purposely sleep deprived.

55. Plaintiff Mark Anderson's hands were zip-tied so tightly and for such a length of time that they became numb.

### F. STACY NEWELL

56. As retaliation for the riot Plaintiff Newell was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Newell was forced to lay on his stomach for approximately (24) hours. During this time Plaintiff Newell was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

57. Plaintiff Newell was forced to continue to wear his soiled clothing while being bused to Eastern Kentucky Correctional Complex (EKCC).

58. Plaintiff Newell was forced to continue to wear his soiled clothing while eating.

59. While Plaintiff Newell was wearing his soiled clothing Unidentified Defendants laughed and taunted him.

60. Following the riot Plaintiff Newell requested medical attention and prescriptions for a pre-existing condition, Plaintiff Newell did not receive medical attention for approximately (90) days.

### G. JOHN POUND

61. As retaliation for the riot Plaintiff Pound was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Pound was forced to lay on his stomach for approximately (26) hours. During this time Plaintiff Pound was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

62. Plaintiff Pound was forced to wear his soiled clothing and was not provided a shower for (6) days.

63. Following the riot Plaintiff Pound was placed in the "hole" prior to receiving an internal conviction for involvement in the riot. Plaintiff Pound was also forced to remain in the "hole" beyond the time required by his internal sentence.

64. While in the "hole" Plaintiff Pound was not allowed to purchase extra food, as a result Plaintiff Pound lost significant weight.

65. Prior to incarceration Plaintiff Pound was diagnosed with Hepatitis C, following the riot Plaintiff Pound was not provided medical attention or medication for Hepatitis C.

66. Prior to incarceration Plaintiff Pound was diagnosed with hyperlipedemia, following the riot Plaintiff Pound was not provided a proper low cholesterol diet.

67. Following the riot Plaintiff Pound acquired the infectious disease methicillin-resistant staphylococcus aureaus ("MRSA"), Plaintiff Pound received little or no medical treatment for MRSA.

68. Following the riot Plaintiff Pound was given the incorrect medication, instead of his own, resulting in an allergic reaction.

69. Concerned for his health Plaintiff Pound asked if he could receive a phone call to call someone for help, he was denied access to any phone call, after making the request unidentified Defendants arrived and stripped him to his boxers and forced him to lay on a metal cot with no padding or blankets which resulted in sleep deprivation.

70. Plaintiff Pound made repeated requests to file grievances in relation to his treatment but was denied access each time.

### H. GREG REED

71. As retaliation for the riot Plaintiff Reed was flex cuffed by Defendant Harris. Defendant Harris then pushed Plaintiff Reed forward, Plaintiff Reed spun around to avoid falling on his face, and as a result Plaintiff Reed fell on his flex cuffed hands causing his hand to facture.

72. As retaliation for the riot Plaintiff Reed was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Reed was forced to lay on his stomach for approximately (26) hours. During this time Plaintiff Reed was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

### I. MICHAEL REECE

73. As retaliation for the riot Plaintiff Reece was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Reece was forced to lay on his stomach for approximately (24) hours. During this time Plaintiff Reece was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

74. Plaintiff Reece told unidentified Defendants that he was having trouble breathing and was having a panic attack.

75. The unidentified Defendants did not release Plaintiff Reece but started screaming at him that if he got up he would be shot.

76. In response to his panic attack Plaintiff Reece was instructed to turn his head to the side.

77. While Plaintiff Reece was restrained, Defendant Humpfleet and Defendant Lunsford then stomped Plaintiff Reece in the back with his boot and told him to keep his "fucking face in the dirt."

78. As a result of being stomped, Plaintiff Reece's back "popped" and he was in severe pain.

79. Defendant Humpfleet or Defendant Lunsford then slammed Plaintiff Reece's face into the dirt multiple times.

80. As a result of the attack Plaintiff Reece suffers chronic back pain.

81. Plaintiff Reece attempted to file two grievances regarding his treatment but was transferred prior to their resolution.

82. Following the riot Plaintiff Reece was placed in segregation prior to receiving an internal conviction for involvement in the riot. Plaintiff Reece also was forced to remain in segregation beyond the time required by his sentence.

83. Ultimately Plaintiff Reece has been transferred back to Northpoint and continues to suffer harassment at the hands of the guards.

84. While Plaintiff Reece was in segregation, Officer Weitzel repeatedly spit tobacco juice under his cell door. Plaintiff Reece has filed a grievance regarding this harassment.

85. In response to a grievance filed by Plaintiff Reece the Department of Corrections stated that they do not have a procedure whereby an inmate may file a conflict against a staff member.

86. Many of Plaintiff Reece's grievances were "lost" or never answered.

## J.  JEREMY DUREE

87. In retaliation for the riot unidentified Defendants came into Dorm 1, where Plaintiff Duree was housed and ordered him to lie down on the ground or be shot.

88. Plaintiff Duree complied with the Defendant's request.

89. While on the ground Plaintiff Duree was then asked him to put his left hand back, as he did this the Defendant stomped his left hand and ground Plaintiff Duree's hand with his boot.

90. This Defendant than reached down, took Plaintiff Duree's left and right hands and wrenched them behind his back.

91. The unidentified Defendant than applied zip ties to Plaintiff Duree's wrist.

92. The zip ties were applied so tightly that Plaintiff Duree's wrist started to bleed.

93. As a result of the over-tightening of the zip ties Plaintiff Duree suffered scarring on his wrists.

94. As Plaintiff Duree was escorted past Medical staff member Dana Johnson with bleeding wrists she provided no aid.

95. When Sgt. Weitzel was asked by Plaintiff Duree to loosen his restraints he was told to "shut the fuck up."  Further words were exchanged, upon which Sgt Weitzel shoved a gun in the Plaintiff's face and threatened to shoot him.

96. The restraints were finally changed by an unknown C.O.

97. In further retaliation for the riot Plaintiff Duree was instructed to go to the baseball field.  Upon arrival in the baseball field he was restrained and forced to lie face down.  Plaintiff Duree was forced to lay on his stomach for approximately (12) hours.  During this time Plaintiff Duree was denied access to food and water.  He was also denied access to a

restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

98. Plaintiff Duree was then transferred from the baseball field to the gym to be housed.

99. Plaintiff Duree was forced to go four days without a shower.

100. While in the gym Plaintiff Duree exchanged words with a C.O., after which he was taken into the recreation room by C.O. Mankin, C.O. Chamberlain, Sgt. Childress and Sgt. Stevens.

101. After arriving in the recreation room, Plaintiff Duree was restrained and forced to face the wall.

102. While facing the wall, C.O. Mankin yelled "fucker stop resisting".

103. While Plaintiff Duree was restrained C.O. Mankin grabbed him by the head, yanked his head back, slammed his face into the wall and then slammed his body to the floor.

104. Plaintiff Duree was then picked up, walked to the door by C.O. Mankin.

105. C.O. Mankin then slammed Plaintiff Duree's head into the door and his body to the floor.

106. While Plaintiff Duree was on the floor C.O. Mankin slammed his knees into Plaintiff Duree's sides, back and head.

107. C.O. Mankin and an unidentified officer carried Plaintiff Duree over to a metal fire extinguisher lock box and slammed his body into it.

108. C.O. Mankin, C.O. Chamberlain, Sgt. Stevens, and Sgt Childress then began punching Plaintiff Duree all over.

109. Plaintiff Duree was later taken outside and thrown into the gravel, where all four Defendants began to stomp his head, ribs, legs, and genitals.

110. When the Defendants carried Plaintiff Duree past the smoke shed they slammed his head into the wooden post.

111. While yanking him from the ground and back to his feet one of the four Defendants tore his right shoulder.

112. When Plaintiff Duree finally arrived at segregation, one of the four defendants punched him in the back of the head and his feet were kicked out from under him.

113. While on the ground in segregation he was further attacked by these four Defendants. His eyes were poked, his genitals were scratched and squeezed, he was struck in the throat, and his hair was pulled.

## K.  BOBBY HOSKINS

114. As retaliation for the riot Plaintiff Hoskins was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Hoskins was forced to lay on his stomach for approximately (24) hours. During this time Plaintiff Hoskins was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

## L.  EDMUND CHANEY

115. Prior to the riot, Plaintiff Chaney was accused of possessing alcohol and complied with a request made by Defendant Vaught for a breathalyzer test.

116. In order to be tested Plaintiff Chaney was taken to the operations center where he was placed in handcuffs by Defendant Vaught.

117. After handcuffing Plaintiff Chaney, Defendant Vaught cursed at Plaintiff Chaney and began to remove the handcuffs so that he could fight Plaintiff Chaney.

118. Defendant Vaught was instructed by a Lieutenant not to remove the handcuffs but did so anyway so that he could fight Plaintiff Chaney.

119. Despite not actually fighting, Plaintiff Chaney was placed in segregation as a result of an accusation by Defendant Vaught.

## M. SHAWN WILSON

120. As retaliation for the riot Plaintiff Wilson was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Wilson was forced to lay on his stomach for approximately (24) hours. During this time Plaintiff Wilson was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

121. Following the riot, Plaintiff Wilson was then moved to the gymnasium of the prison where he remained zip tied and was again forced to attempt to sleep zip tied.

122. Plaintiff Wilson was zip tied for (48) hours.

123. Covered in urine and feces Plaintiff Wilson was not provided a shower for (4) to (5) days.

## N. RYAN MCCORKLE

124. Plaintiff McCorkle was forced out of his dorm by smoke from the fire during the riot. Upon exiting his dorm Plaintiff McCorkle was commanded to lie down and he complied.

125. While in compliance Plaintiff McCorkle was sprayed with pepper spray.

126. Plaintiff McCorkle was then handcuffed with flex cuffs so tightly it cut off circulation to his hands.

127. As retaliation for the riot Plaintiff McCorkle was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff

McCorkle was forced to lay on his stomach for approximately (24) hours. During this time Plaintiff McCorkle was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

### O. DUSTIN BRUMLEY

128. Prior to incarceration Plaintiff Brumley was in an auto accident where he broke (12) vertebrae in his back. As a result Plaintiff Brumley had a spinal fusion with rods and pins.

129. Plaintiff Brumley's prior injury required that he be handcuffed in the front and not in the back.

130. During the riot, while Plaintiff Brumley was being restrained, he attempted to inform unidentified Defendants that he required handcuffing in the front.

131. Multiple unidentified Defendants then jumped on top of Plaintiff Brumley, applied pressure with their knees into the middle of his back, and over tightened his zip ties.

132. The zip ties were applied so tight that Plaintiff Brumley lost circulation and couldn't feel his hands.

133. When he requested that the zip ties be loosened he was told that "he shouldn't have come to prison".

134. While in the baseball field and restrained Plaintiff Brumley was forced to remain on his stomach. Plaintiff Brumley was forced to lay on his stomach for approximately (24) hours. During this time Plaintiff Brumley was denied access to food and water. When asked he was also denied access to a restroom and was forced to urinate and defecate on himself. He

was forced to attempt to sleep on his stomach in his own urine and feces while exposed to the conditions while restrained.

### P.  JOSEPH PITTMANN

135. As retaliation for the riot Plaintiff Pittman was instructed to go to the baseball field.  Upon arrival in the baseball field he was restrained and forced to lie face down.  Plaintiff Pittman was forced to lay on his stomach for approximately (24) hours.  During this time Plaintiff Pittman was denied access to food and water.  He was also denied access to a restroom, and was forced to urinate and defecate on himself.  He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

### Q.  TEKO HATFIELD

136. As retaliation for the riot, Plaintiff Hatfield was placed in the "hole".

137. Plaintiff Hatfield was placed in the "hole" prior to having any charges filed against him for the riot.  Plaintiff Hatfield was forced to remain in the "hole" after he had served his time for the internal conviction.

138. While in the "hole" Plaintiff Hatfield was confined to his cell for 23 hours a day.

### R.  TIMONTHY RILEY

139. As retaliation for the riot Plaintiff Riley was instructed to go to the baseball field.  Upon arrival in the baseball field he was restrained and forced to lie face down.  Plaintiff Riley was forced to lay on his stomach for approximately (48) hours.  During this time Plaintiff Riley was denied access to food and water.  He was also denied access to a restroom, and was forced to urinate and defecate on himself.  He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

140. Plaintiff Riley's hands were zip-tied so tightly and for such a length of time that became numb.

### S.  ROBERT ALVEY

141. As retaliation for the riot, Plaintiff Alvey was placed in the "hole".

142. Plaintiff Alvey was placed in the "hole" prior to having any charges filed against him for the riot.  Plaintiff Alvey was forced to remain in the "hole" after he had served his time for the internal conviction.

143. While in the "hole" Plaintiff Alvey was confined to his cell for 23 hours a day.

### T.  DAVID ANDERSON

144. As retaliation for the riot, Plaintiff Anderson was placed in the "hole".

145. Plaintiff Anderson was placed in the "hole" prior to having any charges filed against him for the riot.  Plaintiff Hatfield was forced to remain in the "hole" after he had served his time for the internal conviction.

146. While in the "hole" Plaintiff Anderson was confined to his cell for 23 hours a day.

### U.  CLIFTON BOARDS

147. Prior to the riot, Plaintiff Clifton Boards had a sprained ankle.

148. As a result of that injury Plaintiff Clifton Boards was given crutches to avoid placing weight on his ankle.

149. In retaliation for the riot an unidentified Defendant took Plaintiff Clifton Board's crutches and forced him to walk on his sprained ankle resulting in severe pain.

### V.    TYRONE CHANDLER

150. As retaliation for the riot Plaintiff Chandler was instructed to go to the baseball field.  Upon arrival in the baseball field he was restrained and forced to lie face down.  Plaintiff Chandler

was forced to lay on his stomach for approximately (24) hours.  During this time Plaintiff Chandler was denied access to food and water.  He was also denied access to a restroom, and was forced to urinate and defecate on himself.  He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

### W. ROBERT WATTS

151. During the riot Plaintiff Robert Watts was forced to stay in his room and denied the ability to evacuate despite the fact that his dorm was on fire.

152. Plaintiff Robert Watts was forced to breathe toxic fumes and smoke because he was held in his dorm while it was on fire.

### X.    MARCUS MENTER

153. As retaliation for the riot, Plaintiff Minter was placed in the "hole".

154. Plaintiff Minter was placed in the "hole" prior to having any charges filed against him for the riot.  Plaintiff Minter was forced to remain in the "hole" after he had served his time for the internal conviction.

155. While in the "hole" Plaintiff Minter was confined to his cell for 23 hours a day.

### Y.    CHRIS MOBERLY

156. As retaliation for the riot, Plaintiff Moberly was placed in the "hole".

157. Plaintiff Moberly was placed in the "hole" prior to having any charges filed against him for the riot.  Plaintiff Moberly was forced to remain in the "hole" after he had served his time for the internal conviction.

158. While in the "hole" Plaintiff Minter was confined to his cell for 23 hours a day.

### Z.  KELLEY CHEATHAM

159. As retaliation for the riot Plaintiff Cheatham was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Cheatham was forced to lay on his stomach for approximately (24) hours. During this time Plaintiff Cheatham was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

160. When he was brought out the baseball field, Sergeant Harris pushed Plaintiff Cheatham forward causing him to fall and break his arm. Plaintiff Cheatham was taken to the hospital in Lee County where he received X-rays confirming his hand was broken. Despite his condition he was denied any medical care for his arm, and it is now crooked.

## AA.   NATHAN STANDARD

161. As retaliation for the riot Plaintiff Standard was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Standard was forced to lay on his stomach for approximately (24) hours. During this time Plaintiff Standard was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

162. Additionally, Plaintiff Standard was placed in the "hole".

163. Plaintiff Standard was placed in the "hole" prior to having any charges filed against him for the riot. Plaintiff Moberly was forced to remain in the "hole" after he had served his time for the internal conviction.

164. While in the "hole" Plaintiff Standard was confined to his cell for 23 hours a day.

### BB.    JARED DERKSON

165. As retaliation for the riot Plaintiff Derkson was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Derkson was forced to lay on his stomach for approximately (12) hours. During this time Plaintiff Derkson was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

### CC.    TONEY HENRY

166. In retaliation for the riot Plaintiff Toney Henry was placed in the "hole".

167. While in the "hole" unidentified Defendants harassed and mentally abused Plaintiff Toney Henry.

168. Unidentified Defendants would purposely frighten Plaintiff Toney Henry by slamming trays in the tray slot, and slamming the fire proof exit doors while he was attempting to sleep, resulting in sleep deprivation.

169. Plaintiff Richard Toney Henry then filed a grievance pertaining to the above actions.

### DD.    MIGUEL BATTLE

170. As retaliation for the riot Plaintiff Battle was instructed to go to the baseball field. Upon arrival in the baseball field he was restrained and forced to lie face down. Plaintiff Battle was forced to lay on his stomach for approximately (24) hours. During this time Plaintiff Battle was denied access to food and water. He was also denied access to a restroom, and was forced to urinate and defecate on himself. He was forced to attempt to sleep on his stomach in his own urine and feces while restrained and exposed to the conditions.

171. Additionally, Plaintiff Battle was placed in the "hole".

172. Plaintiff Battle was placed in the "hole" prior to having any charges filed against him for the riot. Plaintiff Battle was forced to remain in the "hole" after he had served his time for the internal conviction.

173. While in the "hole" Plaintiff Battle was confined to his cell for 23 hours a day.

### EE. JUSTIN MURRAY

174. As retaliation for the riot, Plaintiff Justin Murray was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Justin Murray and the circumvention of the procedural due process rights.

### FF. DERONE WHITTLE

175. As retaliation for the riot, Plaintiff Derone Whittle was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Derone Whittle and the circumvention of the procedural due process rights.

### GG. DEMETRIUS DAVIS

176. As retaliation for the riot, Plaintiff Davis was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Davis and the circumvention of the procedural due process rights.

### HH. SCOTT CANADA

177. As retaliation for the riot, Plaintiff Canada was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who

directly and through agents, perpetrated the inhumane treatment of the Plaintiff Canada and the circumvention of the procedural due process rights.

### II. ANTHONY EDWARDS

178. As retaliation for the riot, Plaintiff Anthony Edwards was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Anthony Edwards and the circumvention of the procedural due process rights.

### JJ. LESLIE EMERSON

179. As retaliation for the riot, Plaintiff Emerson was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Emerson and the circumvention of the procedural due process rights.

### KK. JUSTIN MOORE

180. As retaliation for the riot, Plaintiff Justin Moore was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Justin Moore and the circumvention of the procedural due process rights.

### LL. PERNELL BIBB

181. As retaliation for the riot, Plaintiff Bibb was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Bibb and the circumvention of the procedural due process rights.

### MM. JOHNNY CISSELL

182. As retaliation for the riot, Plaintiff Cissell was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Cissell and the circumvention of the procedural due process rights.

### NN. ROBERT L. WILLIAMS

183. As retaliation for the riot, Plaintiff Robert L. Williams was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Robert L. Williams and the circumvention of the procedural due process rights.

### OO. SHAWN WRIGHT

184. As retaliation for the riot, Plaintiff Shawn Wright was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Shawn Wright and the circumvention of the procedural due process rights.

### PP. ERIC WATTS

185. As retaliation for the riot, Plaintiff Justin Murray was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Justin Murray and the circumvention of the procedural due process rights.

### QQ. JOSEPH CARR

186. As retaliation for the riot, Plaintiff Carr was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly

and through agents, perpetrated the inhumane treatment of the Plaintiff Carr and the circumvention of the procedural due process rights.

### RR.    WILLIAM STRANGE

187. As retaliation for the riot, Plaintiff Strange was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Strange and the circumvention of the procedural due process rights.

### SS. KELLY EDWARDS

188. As retaliation for the riot, Plaintiff Kelly Edwards was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Kelly Edwards and the circumvention of the procedural due process rights.

### TT.    ANTONIO HOUSE-BEY

189. As retaliation for the riot, Plaintiff House-Bey was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff House-Bey and the circumvention of the procedural due process rights.

### UU.    GREGORY LOVELACE

190. As retaliation for the riot, Plaintiff Gregory Lovelace was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Gregory Lovelace and the circumvention of the procedural due process rights.

### VV.    JOHNNY MCKINNEY

191. As retaliation for the riot, Plaintiff McKinney was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff McKinney and the circumvention of the procedural due process rights.

### WW.  RICKY LEE

192. As retaliation for the riot, Plaintiff Lee was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Lee and the circumvention of the procedural due process rights.

### XX.  ROBERT WILLIAMS

193. As retaliation for the riot, Plaintiff Robert Williams was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Robert Williams and the circumvention of the procedural due process rights.

### YY.  MATTHEW JOHNSON

194. As retaliation for the riot, Plaintiff Johnson was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who directly and through agents, perpetrated the inhumane treatment of the Plaintiff Johnson and the circumvention of the procedural due process rights.

### ZZ.  HEZZIE BOWMAN

195. As retaliation for the riot, Plaintiff Bowman was victimized and denied his constitutional rights by the Defendant Northpoint Training Center, guards and medical personnel who

directly and through agents, perpetrated the inhumane treatment of the Plaintiff Bowman and the circumvention of the procedural due process rights.

## FIRST CLAIM FOR RELIEF – 42 U.S.C. § 1983
### (Each Individual Defendant)

196. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

197. The Eighth Amendment of the U.S. Constitution prohibits cruel and unusual punishment against the offenders. The Cruel and Unusual Punishment Clause applies to the states through the Due Process Clause of the Fourteenth Amendment.

198. The Defendants, individually, through their actions and acting under the color of law, subjected the Plaintiffs, and caused the Plaintiffs to be subjected to the deprivations of their rights, privileges, and immunities secured by the Constitution and laws of the Commonwealth of Kentucky and of the United States of America.

## SECOND CLAIM--DELIBERATE INDIFFERENCE AND LACK OF MEDICAL CARE
### (Each Individual Defendant)

199. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

200. The constitutional proscription against cruel and unusual punishment limits the conditions under which the state may confine persons convicted of crimes. Prison authorities may not withhold from prisoners the basic necessities of life, which include necessary medical attention.

201. The presence of medically hazardous and unsanitary conditions involving urine and fecal matter, the presence of toxic fumes and smoke, the presence of Plaintiff Duree's bleeding wrists, the presence of Plaintiff Edwards open wound, the presence of Plaintiff Pound's known diagnosis of Hepatitis C and the presence of injuries following physical assaults are all clearly sufficient to indicate the need for medical attention.

202. Despite their knowledge that it was necessary, Defendants failed, refused or acquiesced in the failure to provide necessary medical attention.

203. As a result, Plaintiffs suffered numerous personal injuries.

204. Given the pre-existing law that clearly prohibited Defendants' conduct, Defendants' treatment of the Plaintiffs was intentional, wanton, malicious, and was indicative of a total and reckless disregard and deliberate indifference to the rights of, and harm to, the Plaintiffs.

205. The deliberate indifference to the serious medical needs of Plaintiffs constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution and §9 of the Ohio Constitution.

## THIRD CLAIM--CRUEL AND UNUSUAL PUNISHMENT
### (Each Individual Defendant)

206. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

207. As a result of the foregoing, Plaintiffs were deprived without due process of law of their rights not to be subjected to cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution in violation of § 1983.

208. The actions of the Defendants were in violation of 42 U.S.C § 1983 when they participated in or allowed or acquiesced in the retaliation against the Plaintiffs when the Plaintiffs were restrained and forced to lie face down on their stomachs for hours. During this time Plaintiffs were denied access to food and water. They were also denied access to a restroom, and were forced to urinate and defecate on themselves. Then the Plaintiffs were forced to attempt to sleep on their stomachs in their own urine and feces while restrained and exposed to the conditions.

209. Additionally, the actions of the Defendants were in violation of 42 U.S.C § 1983 when they participated in or allowed or acquiesced in the retaliation against the Plaintiffs when the

Plaintiffs were place in the "hole" prior to having charges filed against them and were forced to remain in the "hole" after serving their time for their internal conviction.

210. Additionally, the actions of the Defendants were in violation of 42 U.S.C. § when they participated in or allowed or acquiesced in the retaliation against the Plaintiffs when the Plaintiffs were physically assaulted, threatened, harassed and sleep deprived.

211. As a result of the foregoing, Plaintiffs were deprived without due process of law of their rights not to be subjected to cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution in violation of § 1983.

## FOURTH CLAIM – BATTERY
### (Defendants Harris, Bryant, Humpfleet, Lunsford, Mankin, Chamberlain, Childress and Stevens)

212. Plaintiff incorporates by reference each and every allegation in the paragraphs above.

213. The above named Defendants, in retaliation for the riot, physically assaulted Plaintiffs.

214. Defendants' actions in physically assaulting Plaintiffs constitutes harmful and offensive contact.

215. The Defendants intended to use excessive force against the Plaintiffs and to inflict unnecessary pain.

216. The Defendants' actions constitute a battery on the Plaintiffs.

## FIFTH CLAIM—FAILURE TO PROTECT
### (Each Individual Defendant)

217. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

218. The actions of the Defendants were a failure to protect when they participated in or allowed or acquiesced in the retaliation against the Plaintiffs when the Plaintiffs were restrained and forced to lie face down on their stomachs for hours. During this time Plaintiffs were denied access to food and water. They were also denied access to a restroom, and were forced to

urinate and defecate on themselves. Then the Plaintiffs were forced to attempt to sleep on their stomachs in their own urine and feces while restrained and exposed to the conditions.

219. Additionally, the actions of the Defendants were a failure to protect when they participated in or allowed or acquiesced in the retaliation against the Plaintiffs when the Plaintiffs were place in the "hole" prior to having charges filed against them and were forced to remain in the "hole" after serving their time for their internal conviction.

220. Additionally, the actions of the Defendants were a failure to protect when they participated in or allowed or acquiesced in the retaliation against the Plaintiffs when the Plaintiffs were physically assaulted, threatened, harassed, sleep deprived and not provided medical attention.

221. The Individual Defendants failed to protect Plaintiffs from excessive force in violation of Plaintiffs' Eight Amendment right.

222. The individual Defendants are liable for the medical injuries they each respectively exacerbated in the individual Plaintiffs, as well as the medical injuries they permitted their fellow officer to complicate.

223. The Individual Defendants failed to protect Plaintiffs from other Defendants and their co-workers in the denial of their most basic and necessary medical and corporal needs.

224. As a result of the foregoing, Plaintiffs were deprived without due process of law of their rights not to be subjected to cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution in violation of § 1983.

## SIXTH CLAIM—POLICY OR PRACTICE CLAIM
### (Defendant North Point Training Center)

225. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

226. The offenses described above resulted from the failure of Defendant Northpoint Detention Center to employ qualified persons for positions of authority, or to properly or conscientiously train and supervise the conduct of such persons after their employment, or to promulgate appropriate operating policies and procedures either formally or by custom and practice.

227. Defendant Northpoint Training Center, at all times mentioned herein, employed, and was responsible for the establishment of policies or practices governing the employment, training, supervision and conduct of the officers and employees of the Jail.

228. Plaintiffs' injuries are the direct result of policies or practices of Defendant Northpoint Detention Center, either written or unwritten, which are systematically applied at Defendant Northpoint Detention Center. Such practices evince deliberate indifference to the health, well-being and constitutional rights of the Plaintiffs, and the wholesale violations of those rights likely to result from the systematic pursuit of such policies, customs and practices.

## SEVENTH-- POLICY OR PRACTICE CLAIM
### (Defendant Warden Steve Haney)

229. Plaintiffs incorporate by reference each and every allegation in the paragraphs above.

230. Defendant Steve Haney, Warden of Northpoint Detention Center, was responsible for the establishment of policies either formally or by custom and practice for, and for the employment, training, supervision and conduct of the officers and employees of the Defendant Northpoint Detention Center.

231. Defendant Steve Haney failed to have sufficient practices to guarantee that adequate medical procedure was properly dispatched in accordance with inmates' constitutional rights.

232. The deliberate indifference and deprivation of medical care derives from Defendant Steve Haney's promulgation of this unconstitutional policy of non-investigation and non-intervention.

233. Defendant Steve Haney failed to promulgate sufficient policies identifying and removing officers like the individual defendants, which would ensure that inmates are free from the risk of the use of excessive force by his subordinate corrections officers.

234. The excessive force claim derives from Defendant Steve Haney's promulgation of this unconstitutional policy of non-investigation and non-intervention.

### EIGHTH CLAIM—SUPERVISORY LIABILITY
### (Defendant Warden Steve Haney)

235. Plaintiffs incorporate by reference each and every allegation in the paragraphs above and further state:

236. Defendant Warden Steven Haney, by his approval of the actions of his subordinates, has ratified the actions of his subordinates.

237. The Plaintiffs suffered numerous personal injuries as a result of the Defendants' conduct.

### <u>JURY DEMAND</u>

The Plaintiffs respectfully request a jury on all claims triable to a jury.

### <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs request that this Court:

A. Award Plaintiffs compensatory damages against Defendants in an amount to be shown at trial;

B. Award Plaintiffs punitive damages against all Defendants in an amount to be shown at trial;

C. Award Plaintiffs reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and any other applicable law;

D. Issue an injunction, restraining the Defendants from retaliating against the plaintiffs and other class members, (a) for bringing this lawsuit, (b) requiring the individual Defendants to attend anger-management training so that the incidents experienced by the plaintiffs, whose only fault was to be incarcerated at the same facility where some individuals rioted, do not recur; and (c) requiring the Defendant Northpoint to implement policies and procedures to ensure that corrections officers do not act out of anger and violate the civil rights of prisoners, such as happened to the plaintiffs, no matter what the circumstances;

E. Award Plaintiffs prejudgment interest and post judgment interest;

F. Award Plaintiffs such other and further relief, as the Court deems appropriate.



Respectfully submitted,

/s/ Eric C. Deters
ERIC C. DETERS (#81812)
Eric C. Deters & Associates P.S.C.
5247 Madison Pike
Independence, KY 41051-7941
(Telephone) (859) 363-1900
(Facsimile) (859) 363-1444
(Email) eric@ericdeters.com

**Attorney for Plaintiffs**